[No. 8507. Department Two. December 18, 1909.]

R. H. NICHOSON *et al.*, *Respondents*, v. JOHN ERICKSON *et· al.*, *Appellants.*[1]

ATTACHMENT—DISSOLUTION—BURDEN OF PROOF. Upon motion to dissolve an attachment, attacking grounds upon which it was issued, the burden .of proof is upon the plaintiff to establish one of the grounds by a fair preponderance of the evidence.

SAME—EVIDENCE—SUFFICIENCY. An`attachment, granted on the .ground that the defendant was about to convert his property into money and place it beyond the reach of creditors, should be dissolved, where it only appears from the plaintiff's evidence that the ·defendant had offered to sell the property at a price exceeding what plaintiff considered its value, and was preparing to move, and refused to sell to plaintiff and allow a credit on the amount; the defendant having denied the indebtedness *in toto;* that he refused two ·offers to sell his outfit at figures less than his price; only moved it a short distance, openly, and he testified he did not intend to sell.

[1]Reported in 105 Pac. 836.

Appeal from an order of the superior court for Benton county, Canfield, J., entered July 13, 1909, denying a motion to dissolve an attachment, after a hearing before the court. Reversed.

*L. H. Prather* and *C. G. Pence*, for appellants.

*C. O. Anderson* and *C. Stacer*, for respondents.

Dunbar, J.—This action was brought to recover the sum of $1,084.86, alleged to be due for goods sold and delivered by the plaintiffs to defendants. The writ of attachment issued and was served upon defendant Erickson, and certain property taken. A writ was also issued to the sheriff of Franklin county, which was served upon defendant Lawrence. Defendant Erickson moved to dissolve this attachment, and a hearing was had and the motion was finally denied. The grounds for attachment are set forth as follows, after stating the amount claimed to be due:

"The defendants are about to convert their property into money for the purpose of placing it beyond the reach of creditors, and that the defendants are about to convert a part of their property into money, for the purpose of placing it beyond the reach of their creditors, and especially these creditors."

The case was tried mostly upon affidavits, and some oral testimony was also given.

From an examination of the statement of facts, we are forced to the conviction that the court erred in not sustaining the motion to dissolve the attachment. The burden is upon the party plaintiff to sustain the allegations of the affidavit. It was decided by this court, in *Bender v. Rinker*, 21 Wash. 636, 59 Pac. 504, that where a motion to discharge an attachment is presented, supported by affidavits challenging the existence of the grounds upon which the attachment has issued, it becomes the duty of the plaintiff to establish one or more of such grounds by a fair preponderance of the evidence at the hearing.

The evidence in this case, bearing upon the right of the appellants to have this motion sustained, is very brief. The first affidavit presented on the part of the respondents was that of H. J. Duffy, one of the respondents, which was to the effect that Erickson and Lawrence, who had taken the contract from the respondents to do subwork in the construction of the Lower Yakima Irrigation Company's canal, had, during their work under contract, drawn supplies from the company to the amount of $1,084; that Erickson and Lawrence quit work, and refused to work any further for the respondents; that he offered them work at the going cash prices; that he saw Erickson and asked him if he would sell his outfit, which consisted of horses, scrapers, tents, cooking utensils, etc., and that Erickson told him he would take $1,200 for them. Duffy also swore that he offered to buy $35 worth of lumber from Erickson, but Erickson told him that Lawrence had sold it to another party. He said that in his opinion the outfit was worth something like $700, and that he offered to take the same and credit on account, which Erickson refused to allow him to do; that he also made Erickson deliver up to him groceries which he had furnished him, to the amount of $80, which he credited on the account. He states in conclusion that he does not know personally that Erickson tried to sell his property to anybody else. The only other testimony in relation to Erickson was that of one McAlpin, who stated that he rode up to Erickson's camp and asked him if he wanted to sell his outfit, and that Erickson said he would sell, and that he thought it was worth $800; that he told him that he did not think it was worth that much, and rode away; that at that time Erickson was packing and loading to move; the witness concluding with the statement: "This is all I know about his trying to sell his property." The other testimony is in relation to Lawrence, who had left camp, taking with him his own part of the outfit, which had been attached in Franklin county and afterwards released,

so that it has no bearing on the question for determination
here.

On this showing, the plaintiffs rested, and Erickson tes-
tified. He denied the indebtedness to respondents *in toto;*
but claimed that there was a balance due him on their trans-
action, and that Duffy offered to buy his horses and give him
credit on their account for $700, which he refused. But it
must be borne in mind that this account was disputed by
Erickson, so that there was nothing strange in the fact that
he refused to sell the outfit to the respondents and allow
them to give him credit on their account. It is not disputed
that Duffy offered Erickson work, and that he refused to
work for Duffy any further. Neither is this surprising, con-
sidering the feeling that existed between the parties at that
time over the matters in controversy between them. The
only difference in the testimony of Duffy and Erickson is
that Erickson said that he told Duffy that he would take
$1,000 for the outfit, instead of $1,200 as Duffy testified.
Erickson also testified that he had no further occasion to
stay in the camp; that he had quit work; that it was costing
him a good deal to keep his horses there, and he wanted to
go where he could get something to do; that he really did not
want to sell his team, although he would have done so if he
could have got his price, but that he rather preferred to buy
horses, as he was in the contracting business and wanted
horses to work with; that after he had packed up, he took
his outfit about a mile and a half to the farm of his sister-in-
law, for the purpose of doing some work for her in grading
and leveling, and that he was engaged in such work when the
attachment was served; that his camp was about three-
fourths of a mile from the camp of the respondents, and that
when he moved he did so between ten and eleven o'clock in
the forenoon, and went directly through the camp of the re-
spondents, and was seen by their employees. So that it does
not appear from the testimony that Erickson had made any
attempt to sell his outfit, even if it could possibly be con-

ceded that he did not have the right to do so while a contest was being waged between him and the respondents over a disputed account. The only testimony in regard to the sale, or attempted sale, at all, is that two offers were made to Erickson for the outfit, and both were refused by him.

The testimony, in our opinion, being wholly inadequate to warrant the issuance of the writ, we think the court erred in refusing to dissolve the attachment, and the judgment will be reversed, and the cause remanded with instructions to sustain the appellants' motion to dissolve the attachment.

RUDKIN, C. J., PARKER, MOUNT, and CROW, JJ., concur.